UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD W. MAIS, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:15-cv-00684 JAR |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the Commissioner of Social Security's final decision denying Ronald W. Mais' ("Mais") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.

**I.    Background**

On April 17, 2012, Mais filed his application for disability insurance benefits. (Tr. 120-123) The Social Security Administration ("SSA") denied Mais' application on May 25, 2012. (Tr. 58-62) He filed a timely request for a hearing before an administrative law judge ("ALJ") on June 20, 2012. (Tr. 67-70) Following a hearing, the ALJ issued a written decision on July 25, 2013 upholding the denial of benefits. (Tr. 10-30) The Appeals Council granted Mais' request for review and on March 11, 2015, after adopting the ALJ's findings and conclusions, found Mais was not disabled under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 1-8) Thus, the decision of the Appeals Council stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 106-7 (2000).

Mais filed this appeal on April 27, 2015. (Doc. No. 1) The Commissioner filed an answer on May 1, 2015. (Doc. No. 4) Mais filed a Brief in Support of his Complaint. (Doc. No. 15) The Commissioner filed a Brief in Support of the Answer. (Doc. No. 18)

## II. Administrative Decisions

### A. Decision of the ALJ

The ALJ determined that Mais last met the insured requirements of the Social Security Act on December 31, 2011, and had not engaged in substantial gainful activity during the entire period from his alleged onset date of July 1, 2011 through his date last insured of December 31, 2011. (Tr. 15) The ALJ found that Mais has the severe impairments of obesity, degenerative disc disease of the cervical and lumbar spine, mild chronic obstructive pulmonary disease, and major depressive disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16)

After considering the entire record, the ALJ determined that Mais has the residual functional capacity ("RFC") to lift and carry 10 pounds frequently and 20 pounds occasionally, stand or walk six hours out of an eight-hour work day, sit six hours out of an eight-hour work day, never climb ropes, ladders, or scaffolds and occasionally climb stairs and ramps, stoop, kneel, and crouch. (Tr. 18) The ALJ found Mais should avoid concentrated exposure to vibration, extreme cold, fumes, odors, dust, gases, and unprotected heights. (Tr. 18-19) The ALJ further found that Mais is able to understand, remember, and carry out at least simple instructions and non-detailed tasks. (Tr. 19) The ALJ found Mais unable to perform any past relevant work, but that jobs exist in significant numbers in the national economy that he can perform, including cashier II and mail sorter. (Tr. 24-25) Thus, the ALJ found that a finding of

"not disabled" was appropriate. (Tr. 26) Because the decision was unfavorable, the ALJ determined that an examination of whether Mais' alcohol or substance abuse was material was unnecessary. (Id.)

### B. Decision of the Appeals Council

The Appeals Council ("Council") adopted the ALJ's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable. (Tr. 4) The Council also adopted the ALJ's findings or conclusions regarding whether Mais is disabled. (Id.) The Council agreed with the ALJ's findings under steps 1, 2, 3, 4, and 5 of the sequential evaluation through December 31, 2011, and further adopted the findings through September 30, 2012. (Id.)

The Council agreed with the ALJ that Mais has not engaged in substantial gainful activity since July 1, 2011. (Id.) Further, the Council agreed with the ALJ that Mais has severe impairments which do not meet or equal in severity an impairment in the Listings of Impairments, that he is not capable of performing past relevant work, but that there is a significant number of jobs in the national economy that he is capable of performing. (Tr. 4-5)

The Council found Mais met the requirements for disability insured status through September 30, 2012 and that the period between December 31, 2011 and September 30, 2012 was previously un-adjudicated. (Tr. 5) After considering all of the evidence of record, the Council found there was no significant worsening in Mais' condition from December 31, 2011 to September 30, 2012. (Id.)

The Council agreed with the ALJ's assessment of the medical opinions of Javed Qasim, M.D., William Sill, D.O., and Robert Holloway, M.D., noting "issues of timing, lack of objective

3

support, opining outside one's field of expertise, contradictory daily activities, and reliance on subjective complaints in determining the weight assigned to these opinions." (Id.) Based on these findings, the Council found Mais was not under a disability as defined in the Social Security Act from July 1, 2011, the alleged onset date, through September 30, 2012, the date last insured. (Tr. 6)

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on July 17, 2013 and heard testimony from Mais and Delores Gonzalez, a vocational expert.

#### 1. Mais' testimony

Mais was fifty-three years old at the time of the hearing and held a master's degree in business. (Tr. 33) In 1998, he worked as a cook and later as an assistant manager for Lee's Chicken. (Tr. 34) There, he lifted as much as 75-80 pound bags of flour. (Id.) In 1999, Mais worked at Hollywood Motor Company as a used car salesman. (Id.) From 2000 to 2001, he worked as an assistant service manager at Heartland Automotive, an owner/operator of a Jiffy Lube franchise, a job which required lifting less than 10 pounds. (Tr. 34-35) From 2003 to 2004, Mais worked as a retail sales manager at Millbrook Distribution, a specialty food business. (Tr. 35) Mais reported no income from 2007 to 2009 as the result of a back injury and issues with depression. (Id.) In 2011, Mais reported working at a hobby store assisting customers with remote control vehicles and airplanes and replacement parts. (Tr. 35-37) At the time of hearing, Mais was working an average of 8 to 12 hours a week at the hobby shop, normally split between

Wednesdays and Saturdays. (Tr. 37) It was his testimony that he was unable to work full time because of his back issues and a lack of energy. (Id.)

Following an MRI in 2006, Mais was diagnosed with a herniated disc in his lower back by Dr. Stanley Martin. (Tr. 38) He received pain management injections from Dr. Ellis Taylor, at the recommendation of Dr. Martin. (Id.) Mais smokes about half a pack of cigarettes a day, but has transitioned to electronic cigarettes. (Tr. 39) Mais testified he saw Dr. Qasim for depression and anxiety that began in the early 2000's and received psychiatric care from Dr. Qasim every three to four months, at no expense, in order to receive updated medications. (Id.) Mais further testified he suffers from mood swings and low energy on a daily basis, and experiences difficulty interacting socially with people. (Tr. 40)

With regard to sleep issues, Mais stated that sometimes he sleeps very well, but other times will have three-to-four-day periods of restless sleep. (Tr. 40-41) He reported using a CPAP machine, but stated that even with the use of the CPAP, he still has problems sleeping on an average of twice a week. (Tr. 41) Further, he stated that his neck and back pain affects his sleeping. (Id.) Mais testified he received surgery on his neck by Dr. Martin a few years prior. (Tr. 41-42) Mais further stated he did not receive x-rays or updated imaging since his surgery due to a lack of insurance, even though it is a source of discomfort which affects his sleep. (Tr. 42)

Mais was diagnosed with fibromyalgia by Dr. William Sill. (Id.) In addition to back and neck pain, Mais reported pain in his feet, knees, shoulders, and hands. (Tr. 43) He went to the emergency room at Saint Joseph's Hospital in 2011 for pain. (Tr. 44) Mais testified to taking numerous medications, including Valium and Flexeril, which provide him relief. (Id.) Finally, Mais reported that his pain issues affect his ability to stand or work for extended periods of time,

5

but that he is able to take a shower and use the bathroom by himself, even on his worst days. (Tr. 45)

### 2. Testimony of Vocational Expert

For the hypothetical, the ALJ asked vocational expert Delores Gonzalez to assume an individual of Mais' age, education, and work experience who can lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for six out of eight hours and sit for six hours; who can occasionally climb stairs and ramps, but never ropes, ladders, and scaffolds; who can occasionally stoop, kneel and crouch; who should avoid concentrated exposure to extreme cold, fumes, odors, dust and gases, unprotected heights and vibration; and who is able to understand, remember, and carry out at least simple instructions and non-detailed tasks. (Tr. 48) Gonzalez opined that such a person would not be able to perform any past relevant work. (Id.) However, such a person would be able to perform a job such as Cashier Two, Dictionary of Occupational Titles ("DOT") number 211.462-010. This is light, unskilled work with a specific vocational preparation ("SVP") of 2. (Tr. 49) There are 1,707,343 such jobs nationally and 38,094 such jobs in Missouri. (Id.) In addition, such a person could perform the job of mail sorter, DOT number 209.687.026. Again, this is light, unskilled work with a SVP of 2. (Id.) There are 25,532 jobs nationally and 607 such jobs in Missouri. (Id.) Gonzalez stated her testimony was consistent with the DOT and its companion publications. (Id.)

### B. Medical Records

The ALJ summarized Mais' medical records at Tr. 19-24. Relevant medical records are discussed as part of the analysis.

**IV.     Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, No. 4:10CV2184 HEA, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v.

Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the

claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

V.     **Discussion**

In his appeal of the Commissioner's decision, Mais argues that the ALJ's RFC determination lacks medical support in the record. Specifically, Mais contends that both the ALJ and the Appeals Council disregarded the opinions of three treating physicians, Javed Qasim, M.D., William Sill, D.O., and Robert Holloway, M.D. (Doc. No. 15 at 11-12) He argues the ALJ "had a duty to further develop the record by sending Mais for an examination and opinion as to his RFC." (Id. at 11) The Commissioner responds that the ALJ properly afforded weight to the medical opinions to the extent they were supported by the record. (Doc. No. 18 at 8-12)

An ALJ must determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). Because a claimant's RFC is a medical question (as opposed to a vocational question), it must be supported by some medical evidence; however, an ALJ is not limited to considering medical evidence exclusively. "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Lockwood v. Colvin, 627 F. App'x 575, 577 (8th Cir. 2015) (internal citation and quotation marks omitted). Furthermore, an ALJ is required to order medical examinations and tests only if the medical records do not provide sufficient medical evidence to determine whether the claimant is disabled. Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010); Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994); 20 C.F.R. § 1519a(a). As discussed below, the ALJ thoroughly reviewed the medical evidence of record and made factual findings regarding this evidence. There is no indication that the ALJ felt unable to make the assessment he did. Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005).

**William Sill, D.O.**

On July 30, 2012, Dr. Sill completed a medical source statement regarding Mais' cervical and lumbar spinal impairments, sleep apnea, and depression. (Tr. 426-27) Dr. Sill opined that in an 8-hour work day, Mais could sit less than two hours per day, stand or walk about two hours per day, and would need to take unscheduled rest breaks every two hours for 10 to 15 minutes before returning to work. (Tr. 426) Dr. Sill further opined that Mais could occasionally lift up to ten pounds, occasionally twist, and rarely handle, finger or feel with his right hand, as well as stoop, bend, crouch and climb ladders or stairs. (Id.) He stated Mais could never reach in all directions. (Tr. 426-27) Dr. Sill anticipated that Mais would be absent from work more than three days per month because of his impairments. Dr. Sill did not believe emotional factors contributed to the severity of Mais' symptoms and functional limitations; however, he noted that Mais had a marked limitation in his ability to deal with work stress, and that Mais' experience of pain would frequently interfere with his attention and concentration. (Tr. 427) It was Dr. Sill's opinion that Mais cannot maintain a regular work schedule (5 days a week x 8 hours) due to his poor health. (Id.) Dr. Sill augmented these limitations by completing a Physician's Statement for Disabled License Plates/Placard on September 13, 2012, indicating that Mais was permanently disabled, and could not "ambulate or walk 50 feet without stopping to rest due to a severe and disabling arthritic, neurological, orthopedic condition, or other severe and disabling condition." (Tr. 412)[1]

**Robert Holloway, M.D.**

On July 10, 2013, Dr. Holloway completed a medical source statement diagnosing Mais with lumbar degenerative disc disease and cervicalgia, with symptoms of headaches, numbness,

---

[1] This does not, however, prove disability, as a finding of "permanent disability" by a state agency for purposes of disabled license plates is not binding on the Commissioner. See Shaw v. Astrue, No. 4:10CV1127 LMB, 2011 WL 4445830, at *18 (E.D. Mo. Sept. 26, 2011) (citing 20 C.F.R. § 416.904; Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir. 1994)).

tingling, and sensory disturbance, pain, increased muscle tension and spasm, and weakness. (Tr. 21, 445-46) Dr. Holloway opined that Mais could frequently lift ten pounds, sit, stand, and/or walk about two hours out of an eight hour work day, occasionally reach in all directions, twist, and climb stairs, but could never stoop, bend, crouch, do fine-finger manipulation, or climb ladders. (Id.) Dr. Holloway further opined that Mais would require eight unscheduled rest breaks for 15 minutes before returning to work. (Id.) Like Dr. Sill, Dr. Holloway did not believe emotional factors contributed to the severity of Mais' symptoms and functional limitations. (Tr. 446) Nevertheless, he identified depression and anxiety as psychological conditions affecting pain and opined that Mais' experience of pain would constantly interfere with his attention and concentration. (Tr. 446) He also stated Mais would be off task more than 20 percent of the time and would be absent from work more than three days each month from work due to his impairments. (Id.) It was Dr. Holloway's opinion that Mais would have difficulty working a full-time job on a sustained basis. (Id.)

**Javed Qasim, M.D.**

On August 8, 2012, Dr. Qasim completed a psychological medical source statement diagnosing Mais with major depressive disorder with symptoms of sleep and mood disturbance, emotional lability, anhedonia or pervasive loss of interests, difficulty thinking or concentrating, social withdrawal or isolation, and generalized persistent anxiety. (Tr. 404-08) He indicated that Mais has slight restrictions in activities of daily living, moderate difficulties in maintaining social functions, and frequent difficulties in maintaining concentration, persistence or pace. (Tr. 405) Dr. Qasim opined that even a minimal increase in mental demands or change in the environment would cause Mais to decompensate, that his depression exacerbated his physical impairments, making it difficult for him to work a full-time job on a sustained basis, and that he is unable to

function outside a highly supportive living arrangement. Dr. Qasim further opined that Mais' impairments would cause him to be absent from work more than three times a month. (Tr. 405) On July 17, 2013, Dr. Qasim further opined, based on his treatment history of Mais, that the limitations noted on his medical source statement have been in existence since June 30, 2011 (the last day he performed substantial work activity)[2], or at least prior to December 31, 2011, Mais' date last insured for Social Security benefits. (Tr. 461)

A treating physician's opinion is generally given more weight than other sources in a disability proceeding. Cross v. Colvin, No. 4:12CV2322 CEJ, 2014 WL 320161, at *9 (E.D. Mo. Jan. 29, 2014) (citing Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012)). See also 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. Cross, 2014 WL 320161 at *9. "However, [a]n ALJ may discount or disregard a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. An ALJ may give less weight to a conclusory or inconsistent opinion by a treating physician." Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014) (internal quotations omitted); see also Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010); Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007); Goff, 421 F.3d at 790.

The ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports

---

[2] As discussed infra, the records demonstrate that Mais in fact performed substantial gainful activity during this time period. (Tr. 15, 17, 19, 35-37, 133, 136)

13

this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010).

The ALJ gave no weight to the opinions of Dr. Sill and Dr. Holloway because the limitations expressed in their medical source statements exceeded the mild limitations documented in their own treatment records. (Tr. 22) ("Neither physician provided any explanation of why in the medical source statements the limitations are so significant but there is little evidence of claimant symptomology to support those limitations in the treatment records.").

Mais saw Dr. Holloway six times from February 2013 through July 2013. (Tr. 19-21, 447-58) Dr. Holloway consistently noted that Mais was only in mild distress and had no limitations in his range of motion, negative Murphy's sign, full motor strength, mostly normal reflexes, a negative straight leg raise, and decreased grip strength in his left hand. (Tr. 19-21, 452, 447-58) Dr. Holloway treated Mais' symptoms with prescription pain medication and steroid injections, which Mais repeatedly said helped. (Tr. 19-21, 453, 455-57) In particular, on April 16, 2013 and May 14, 2013, Mais reported being "much improved" and that his lower back and thumb pain had decreased. (Tr. 451-52, 454) "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." Wildman, 596 F.3d at 964. See also Clevenger v. S.S.A., 567 F.3d 971, 975 (8th Cir. 2009) (affirming ALJ's decision not to follow opinion of treating physician that was not corroborated by treatment notes).

The ALJ also noted that Mais testified that Dr. Holloway's medical source statement was based on limitations Mais himself reported. (Tr. 22) An ALJ may properly discount a doctor's report for basing limitations on the claimant's subjective complaints as opposed to his own objective findings. Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (citing Teague v.

Astrue, 638 F.3d 611, 616 (8th Cir. 2011)). See also Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) (Commissioner may give treating physician's opinion less deference when it is based on claimant's subjective complaints rather than objective medical evidence.).

Likewise, Dr. Sill treated Mais for spinal impairments. He saw Dr. Sill monthly from May 2011 through September 2012, primarily for prescription refills, and reported that the medication helped with his pain. (Tr. 375-80, 413-29) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Perkins v. Astrue, 648 F.3d 892, 901 (8th Cir. 2011) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)). The ALJ also found both Dr. Sill and Dr. Holloway unqualified to evaluate the effects of Mais' mental impairments as beyond their areas of expertise. (Tr. 22, 23) See Brosnahan v. Barnhart, 336 F.3d 671, 676 (8th Cir. 2003) (holding that an ALJ properly discounted consulting psychologist's opinion because it was based partly on consideration of physical impairments, an area outside the psychologist's expertise).

The ALJ's assessment of the opinions of Dr. Sill and Dr. Holloway is further supported by the objective records in this case, which provide little basis for the significant limitations alleged. (Tr. 22) See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). Although Mais required a partial spinal fusion in December 2003, he was able to return to work full time and continued to work for several years. There was no medical evidence of record that Mais' cervical spinal symptoms continued to be significantly limiting; in subsequent examinations he consistently displayed a normal gait, full range of motion, full motor strength, normal reflexes, normal station, and toe to heel walk, and was able to squat, rise, and hop on his feet. (Tr. 20-21, 216-17, 219) An MRI performed in June 2006 showed mild

degenerative changes at L4-5 with a centrally bulging disc, and a very mild bulge of the L5-S1 disc and no significant disc herniation, stenosis or other abnormality. (Tr. 217, 227, 229) A CT scan in September 2006 showed "fairly mild degenerative changes," with a "mild" disc bulge at L4-5, and a "mild to moderate" disc bulge at L5-S1, but no significant disc herniation, stenosis, or spondylolisthesis. (Tr. 219-23) Mais was treated with epidural steroid injections in 2007 (Tr. 251, 258); however, nothing in the more recent records indicate that his lumbar spine has suffered significant degeneration or increased symptomology. An x-ray performed on February 20, 2013 showed only "slightly decreased" space between discs L4-5 and L5-S1. (Tr. 20, 454) Mais has required no additional surgery.

Because Dr. Sill and Dr. Holloway's opinions are inconsistent with their treatment records and the objective evidence, the Court finds the ALJ's decision to give less weight to their opinions to be reasonable and supported by substantial evidence on the record as whole. Renstrom, 680 F.3d at 1065; Partee v. Astrue, 638 F.3d 860, 864 (8th Cir. 2011). See also Martise, 641 F.3d at 925 ("[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.") (internal quotation marks and citation omitted).

Mais argues that in discounting the opinions of Dr. Sill and Dr. Holloway, the ALJ incorrectly identified his date last insured ("DLI")[3] as December 31, 2011 (see Tr. 21-22), when his actual DLI was September 30, 2012, and that his emphasis on the incorrect date is grounds for reversal. (Doc. No. 15 at 11) The Commissioner responds that the ALJ's error in relying on an incorrect DLI was harmless because the ALJ correctly summarized the substance of all the

---

[3] The DLI marks the last day on which a claimant is eligible for disability insurance benefits, and the claimant must establish disability on or before that date. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.320(b)(2).

medical opinions and evidence, including the evidence that postdates the incorrect DLI. (Doc. No. 18 at 12) The Court agrees with the Commissioner.

The ALJ considered the entire record, which included all medical evidence relating to Mais' alleged disability from December 31, 2011 to September 30, 2012. (Tr. 18-24) No evidence was excluded as a result of the erroneous DLI. Although the ALJ discounted medical opinions after December 31, 2011, the ALJ specifically found that even after December 31, 2011, the records did not indicate a loss of range of motion or lower extremity strength consistent with the significant limitations expressed by both Dr. Sill and Dr. Holloway in their medical source statements. (Tr. 21-22) The Appeals Council considered all the evidence of record and found it "[did] not show any significant worsening of [Mais'] condition from December 31, 2011 through September 30, 2012." (Tr. 5) The Appeals Council properly adopted the ALJ's findings through September 30, 2012 and determined that Mr. Mais was not disabled through September 30, 2012, the correct DIL.

Because Mais has not demonstrated that he has suffered prejudice as a result of the ALJ's incorrect DLI or that the error had any impact on the ALJ's ultimate disability determination, the Court finds the ALJ's error was harmless and does not require remand. See Shooshtarian v. Colvin, No. C13-01973 HRL, 2014 WL 4090581 (N.D. Cal. Aug. 19, 2014) (ALJ's error was harmless and remand was unnecessary because it was apparent from the written decision that the ALJ considered all the medical evidence, including records that postdated the ALJ's misstated DLI.); Ublish v. Astrue, No. 11 C 4359, 2013 WL 80370 at *11 (N.D. Ill. Jan. 7, 2013) ("[T]he ALJ accounted for the entire record up through the decision date and excluded no evidence on account of the erroneous DLI. As a result, this error does not require remand.") (citation omitted)); Tyler v. Astrue, No. 10-599, 2012 WL 4497418 (D. Del. Sept. 28, 2012).

The ALJ also identified a number of reasons for giving "little weight" to Dr. Qasim's opinion. First, the significant mental health symptoms asserted by Dr. Qasim were not consistent with his treatment records during the relevant time period. (Tr. 24) In 2011, Mais' records from Psych Care Consultants indicated he was "doing ok," "doing pretty good," and had "no complaints" regarding his mental impairments. (Tr. 394) On October 26, 2011, Mais was encouraged to taper his medications. (Id.) In late 2012, Mais complained of physical impairments, but had no psychosis and exhibited a calm mood. (Tr. 444) Mais reported no side effects from the medication he was taking for his mental impairments in January 2013 and May 2013. On May 17, 2013, Mais again reported no side effects. He had no psychosis and described his mood as "ok." (Tr. 443)

Second, the ALJ found Mais' capacity to continue working in a job that involves dealing with customer complaints, a "socially difficult position," was inconsistent with the limitations expressed by Dr. Qasim in his medical source statement. (Tr. 18, 24) Dr. Qasim's July 17, 2013 statement was limited to the period of June 30, 2011 to December 31, 2011, and contained an erroneous representation by Mais' attorney that Mais had not worked at the level of substantial gainful activity ("SGA") during that time, when in fact Mais' records from the second and third quarters of 2011 indicated earnings above SGA. (Tr. 36) Dr. Qasim saw Mais only once during this time period, on October 26, 2011, and on that date, Mais had no complaints and indicated he was doing well enough that he had stopped taking his Xanax on some days. (Tr. 394) The ALJ acknowledged Mais was working on a part-time basis, but noted that even that level of work and competence in a job involving dealing with customer complaints was not consistent with the limitations expressed by Dr. Qasim. (Tr. 24) Lastly, the ALJ noted that during the hearing, Mais complained only of physical limitations that prevented him from working; Mais testified that his

18

depression and anxiety were being treated and that he had not had problems in "awhile." (Tr. 17, 24, 37, 39-40)

Upon review of the record, the Court concludes that the ALJ properly evaluated Dr. Qasim's opinions, listing "good reasons" for giving them little weight. Prosch, 201 F.3d at 1013. The Court finds, therefore, that the ALJ's decision to discount Dr. Qasim's opinion is supported by substantial evidence on the record as a whole.

In evaluating Mais' RFC, the ALJ also considered Mais' statements and testimony concerning the intensity, persistence and limiting effects of his symptoms and found them to be of limited credibility. (Tr. 24) See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Mais continued to work part-time during the relevant period (Tr. 15, 17, 19, 35-37, 133, 136), which tends to discredit his claims that he had difficulty interacting with others and that his impairments were as disabling as alleged. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain.").

Further, Mais reported daily activities that were inconsistent with his claims of disability. See Sutton v. Colvin, No. 4:13CV1035 TIA, 2014 WL 4352045, at *13 (E.D. Mo. Sept. 1, 2014) (citing cases). For example, he sometimes performed yard work, could prepare simple meals and helped prepare other meals, went outside almost daily, could walk around the block, walked or drove a car to get around, and went shopping in stores twice a week for an hour. (Tr. 15, 17, 155-57, 159, 163) He also reported working on remote control airplanes as a hobby, and socializing with members of a remote control airplane club, although not as frequently as in the past. (Tr. 158-60) Mais reported that he lived with his girlfriend, socialized with family, and did not have problems getting along with others, including authority figures. (Tr. 17, 158-60)

## VI. Conclusion

Upon review of the record, the Court concludes the ALJ properly evaluated the medical opinions of Mr. Mais' treating physicians, listing "good reasons" for giving them little to no weight. Further, because the ALJ correctly summarized the substance of all the medical opinions and medical evidence, including evidence between December 31, 2011 and September 30, 2012, any error by the ALJ regarding Mais' date last insured was harmless. In evaluating Mais' RFC, the ALJ also considered Mais' statements and testimony concerning the intensity, persistence and limiting effects of his symptoms and found them to be of limited credibility. For these reasons, the Court finds there is substantial evidence in the record as a whole to support the denial of benefits and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 26th day of September, 2016.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**